FILED
IN CLERKS OFFICE
2025 SEP 15 AM 10: 50
U.S. DISTRICT COURT
DISTRICT OF MASS.

**UNITED STATES DISTRICT COURT**
**OF MASSACHUSETTS**

| | | |
|---|---|---|
| **TYRONE BOZEMAN** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** 1:25-cv-12253-MJJ |
| | ) | |
| **EQUIFAX INFORMATION SERVICES, LLC** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff Tyrone Bozeman, proceeding pro se, respectfully submits this Memorandum of Law in Opposition to Defendant Equifax Information Services LLC's ("Equifax") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Motion should be denied.

## I. INTRODUCTION

Plaintiff's Complaint alleges that Equifax violated 15 U.S.C. § 1681g(a)(1) of the Fair Credit Reporting Act ("FCRA") by failing to clearly and accurately disclose all information in his consumer file upon request, specifically by omitting full account numbers, certain account information, and payment history for his American Express account. These omissions hindered Plaintiff's ability to understand, verify, and monitor his credit information, causing frustration and emotional distress. The Complaint pleads both negligent and willful violations, seeking actual damages, statutory damages, punitive damages, and costs.

Equifax's Motion argues that the omitted information does not bear on creditworthiness and thus is not part of the "file" required to be disclosed, and that Plaintiff lacks Article III standing due to insufficient allegations of actual damages. These arguments fail. The plain language of the FCRA requires disclosure of all information in the file, and courts have recognized that full account numbers and payment history must be disclosed clearly and accurately. Moreover, Plaintiff has alleged a concrete informational injury sufficient for standing, along with emotional distress as actual damages; the willful violation allegation further supports statutory damages without actual harm.

In the context of the Fair Credit Reporting Act (FCRA), a consumer's "file" and a "consumer report" are related but distinct concepts, with the file serving as the underlying source of data and the report representing a specific output derived from it.

A consumer's "file" refers to the complete collection of all information about that individual that a consumer reporting agency (CRA), such as TransUnion, Experian, or Equifax, records and retains in its systems, regardless of how the information is stored or organized. This encompasses everything the CRA has on record, including personal identifiers (like names, addresses, Social Security numbers, and phone numbers), credit history details, account numbers, public records, and sources of the information. The FCRA defines "file" explicitly in 15 U.S.C. § 1681a(g) as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." The purpose of this broad scope is to give consumers full access to their data via disclosure requests under 15 U.S.C. § 1681g, allowing them to identify inaccuracies, dispute issues, and ensure corrections through procedures like those in 15 U.S.C. § 1681i.

A "consumer report," on the other hand, is a specific communication of information by a CRA to a third party (such as a lender, employer, or insurer), typically drawing from the consumer's file but often as a curated or subset version formatted for a particular use. The FCRA defines it in 15 U.S.C. § 1681a(d) as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for" credit, insurance, employment, or other authorized purposes. Unlike the file, which is internal and comprehensive, a consumer report is an external product prepared for permissible decision-making scenarios, and CRAs must follow reasonable procedures to ensure its accuracy under 15 U.S.C. § 1681e(b).

In essence, the file is the raw, exhaustive repository of data held by the CRA, while the consumer report is a targeted, often partial extraction from that file shared with others for evaluative purposes. The FCRA treats the file as broader than the report, as evidenced by provisions like 15 U.S.C. § 1681i(a)(6)(B), which refers to a consumer report "based upon the consumer's file," and 15 U.S.C. § 1681g(a), which distinguishes between furnishing a "consumer report" and "all other information in a consumer's file." This distinction supports the FCRA's goals of transparency and accuracy, enabling consumers to review their full file while regulating how reports are compiled and disseminated.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court must accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). Conclusory allegations are not credited, but the Court need not ignore plausible claims supported by specific facts. Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 40 (1st Cir. 1998).

Pro se complaints are liberally construed, requiring less stringent pleading standards. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013). Even so, Plaintiff's Complaint meets the plausibility threshold, as it details the specific omissions and their impact.

## III. ARGUMENT

### A. Plaintiff's Claims Involve Information in His "File" That Must Be Clearly and Accurately Disclosed Under § 1681g

Section 1681g(a)(1) requires consumer reporting agencies ("CRAs") like Equifax to "clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). The FCRA defines "file" broadly as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. § 1681a(g). While some courts, following Gillespie v. Trans Union Corp., 482 F.3d 907 (7th Cir. 2007), have narrowed this to information that "might be furnished, or has been furnished, in a consumer report," id. at 909, this interpretation is not binding in the First Circuit and has been criticized for ignoring the statute's plain text and purpose.

Even under Gillespie, the omitted information qualifies. Full account numbers, account information, and payment history are routinely furnished in consumer reports to third parties, as

alleged in the Complaint (¶¶ 13-15). Payment history directly bears on creditworthiness, influencing credit scores and eligibility. Account numbers enable consumers to identify and verify accounts, preventing confusion and ensuring accuracy. Omitting them reduces consumers to "guessing" about their credit data (Compl. ¶ 17).

Courts have denied motions to dismiss similar claims. In Washington v. Equifax Information Services LLC, No. 3:19-cv-00154, 2019 WL 2448673, at *3 (M.D. Tenn. June 12, 2019), the court held that truncating account numbers states a plausible § 1681g violation, as the plain language requires "clear and accurate" disclosure of all file information. Absent binding authority permitting truncation, the claim survives. Id. The Federal Trade Commission (FTC) agrees: truncating account numbers does not provide "accurate" disclosure under § 1681g. FTC Advisory Opinion to Darcy (June 30, 2000) (attached as Ex. B to Compl.).

Rawls v. Trans Union, No. 1:24-cv-03948-VMC-CCB, ECF No. 18 (N.D. Ga. Aug. 05, 2025) the court held that truncating account numbers states a plausible § 1681g violation, as the plain language requires "clear and accurate" disclosure of all file information and denied Trans Union motion to dismiss.

Equifax's cited cases are distinguishable or unpersuasive. For example, Vaiano v. Experian Information Solutions, Inc., No. 1:24-cv-12245-JEK, 2025 WL 2323521 (D. Mass. Aug. 12, 2025), and Wimberly v. Experian Information Solutions, Inc., No. 1:18-cv-06058, 2019 WL 6895757 (S.D.N.Y. Dec. 17, 2019), involved internal processing data not furnished in reports, unlike the account details here. Walker v. Equifax Information Services, LLC, No. 1:21-cv-01045-ELR, 2024 WL 4815355 (N.D. Ga. Sept. 23, 2024), addressed accuracy under § 1681e(b), not disclosure. Harris v. Trans Union LLC, No. 1:25-cv-192-MLB-JKL, 2025 U.S. Dist. LEXIS 98701

(N.D. Ga. May 23, 2025), similarly focused on misleading reports, not omissions in consumer disclosures. Cortez v. Trans Union, LLC, 617 F.3d 688 (3d Cir. 2010), emphasized that actionable information must relate to creditworthiness, which payment history and identifying details do.

Critics of Gillespie's narrow view argue it conflates "file" with "consumer report," ignoring § 1681a's broader definition. See, e.g., Tailford v. Experian Info. Sols., Inc., 26 F.4th 1092, 1100 (9th Cir. 2022) (noting tension but applying Gillespie; however, requiring disclosure of inquiries under § 1681g(a)(5)). The FCRA's purpose to promote accuracy and fairness in credit reporting supports full disclosure to empower consumers. Omissions like these frustrate that goal.

15 U.S.C. § 1681g(a) (emphasis added). See Jones v. Equifax, Inc., 2015 WL 5092514, at *3 (E.D. Va. Aug. 27, 2015) (FCRA requires disclosure of all information that might be furnished or has been furnished in consumer report on that consumer); Holmes v. Telecheck Int'l, 556 F. Supp. 2d 819, 838 (M.D. Tenn. 2008) (FCRA requires complete disclosure of all transactions in consumer's file). See also Wilson v. Equifax Info. Servs., L.L.C., 2020 WL 2771184, at *7 (D. Nev. May 27, 2020) (plaintiff adequately alleged defendant failed to disclose all information in her file by failing to include positive payment data); Hinkle v. Experian Info. Sols. Inc., 2018 WL 4610656, at *3 (W.D.N.C. Sept. 5, 2018), adopted, 2018 WL 4600299 (W.D.N.C. Sept. 25, 2018) (pro se; denying dismissal of claim that Equifax failed to provide full consumer file disclosure where plaintiff alleged that Equifax had more information about her than she received; not appropriate stage of litigation for court to make findings of fact concerning definition of consumer file).

**B. Plaintiff Has Article III Standing, as He Alleges Concrete Injury and Actual Damages**

Article III requires (1) concrete and particularized injury, (2) traceable to the defendant's conduct, and (3) redressable by the court. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992). Equifax focuses on injury, claiming no actual damages from a negligent violation. But Plaintiff alleges willful conduct (Compl. ¶¶ 34-35, 40), allowing statutory damages up to $1,000 per violation without actual damages. 15 U.S.C. § 1681n(a)(1)(A); see Santos v. Healthcare Revenue Recovery Grp., LLC, 90 F.4th 126, 133 (3d Cir. 2024) (willful FCRA violations permit statutory damages absent actual harm).

Even for negligent claims, Plaintiff alleges actual damages: frustration, emotional distress, and time spent deciphering the incomplete disclosure (Compl. ¶¶ 24, 37). Emotional distress qualifies as actual damages under the FCRA. See Stevenson v. TRW Inc., 987 F.2d 288, 296 (5th Cir. 1993).

Moreover, the deprivation of information constitutes a concrete informational injury. TransUnion LLC v. Ramirez, 594 U.S. 413, 441 (2021), clarified that statutory violations alone are insufficient, but intangible harms like informational injuries are concrete if analogous to traditional harms. In Havens Realty Corp. v. Coleman, 455 U.S. 363, 373-74 (1982), the Supreme Court recognized standing for denial of truthful information under the Fair Housing Act. Similarly, FCRA § 1681g protects consumers' right to monitor their credit files. Omissions impair this right, causing confusion and hindering error correction.

Post-TransUnion cases confirm standing for § 1681g claims. In Tailford, 26 F.4th at 1099-1100, the Ninth Circuit found standing where incomplete disclosures caused confusion and investigative burdens, distinguishing from TransUnion's mere risk of harm. In Kelly v. RealPage, Inc., 47 F.4th 202, 213-14 (3d Cir. 2022), non-disclosure under the FCRA was concrete because

it prevented credit monitoring. See also Huber v. Simon's Agency, Inc., 84 F.4th 110, 121 (3d Cir. 2023) (informational injury requires adverse effects; here, omissions caused such effects). Plaintiff's allegations trace directly to Equifax's omissions and are redressable by damages.

Equifax's cases, like McIntyre v. RentGrow, Inc., 34 F.4th 87 (1st Cir. 2022), involved no causal link to harm; here, the link is clear.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Equifax's Motion to Dismiss and grant such other relief as deemed just and proper.

DATED: September 15, 2025

Respectfully submitted,

Tyrone Bozeman
26 Abbot Street
Boston, MA 02124
857-212-3076
Tjboze96@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2025, I caused the foregoing document to be filed with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record:

Mario Nimock